UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER W. HANSEN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-1133 (RMC) |
| JAMES H. BILLINGTON,<br>LIBRARIAN OF CONGRESS | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Christopher W. Hansen, a caucasian employee of the Library of Congress, sues James H. Billington, Librarian of Congress, for alleged race, age, disability, and/or reprisal discrimination in violation of Title VII of the Civil Rights Act of 1974, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Mr. Hansen also claims a hostile work environment. Mr. Billington moves to dismiss part of the Amended Complaint for the alleged failure of Mr. Hansen to exhaust his administrative remedies as to certain of the claims. *See* Def.'s Mem. In Supp. of Mot. to Dismiss ("Def.'s Mem.") [Dkt. # 16].

**I.  FACTS**

Mr. Hansen has been employed by the Library of Congress for over 24 years. He is currently working as a Contracting Specialist. He was born on March 21, 1954, and he suffers from various medical problems that are irrelevant to the matters at hand.

Mr. Hansen alleges that he is the longest-serving contract officer in the history of the

Library and that he has been recognized multiple times for his achievements. Nonetheless, he complains, he was not selected for promotion in August 2005 under vacancy announcement ('VA") 05-0168 and, instead, the Library promoted an African American male who had worked there for about six months. Am. Compl. ¶ 9a. He also complains that he applied for promotion in late 2005 in response to VA-05-0233, after he had submitted a complaint alleging a failure of equal employment opportunity ("EEO") in his non-selection under VA-05-0168, but the announcement was withdrawn because all candidates were "unworthy." *Id.* ¶ 9b. Further, he complains that he applied for promotion in 2006 under VA-06-0078, but an African American male with no contracting experience with the Library was selected. *Id.* ¶ 9c.

As indicated above, Mr. Hansen filed applications under three vacancy announcements: VA-05-0168; VA-05-0233; and VA-06-078. When he was not selected for any of the vacancies, he filed three EEO complaints, which the Library designated as EEO Case Nos. 06-11, 06-31, and 07-01, respectively.

### A. EEO Case No. 06-11 (non-selection for VA-05-0168)

On December 16, 2005, the Library selected Jackie Johnson, an African American male, instead of Mr. Hansen for the position of Contracting Specialist, which had been advertised as VA 05-0168. *See* Def.'s Mem., 1 (Allegation of Discrimination). Mr. Hansen contacted the Library's EEO Complaints Office ("EEOCO") on December 22, 2005,[1] and, on or about February

---

[1] The Allegation of Discrimination form completed by Mr. Hansen read:

> On December 16, 2005, Nydia Colemen, black, female, chief of contracts, announced the results of recent recruitment actions. One name, Jackie Johnson, black male, 33 years old, was announced as being selected for a GS-1102-13 position even though he had started work in the Library less than five or six months before the interview for the position and has never

5, 2006, he filed a formal complaint alleging discrimination based on race and age in his non-selection. *See id*. at 3.

The parties agree that the Library has adopted rules and regulations concerning employment matters, including a regulation that requires a Library staff member who believes that s/he has been discriminated against to contact the EEOCO "not later than 20 workdays after the date of the alleged discriminatory matter." *See id*., Ex. 8 (Library of Congress Regulation ("LCR") 2010-3.1 § 4.A, Resolution of Problems, Complaints, and Charges in Library Employment and Staff Relations Under the Equal Employment Opportunity Program); *See also Cook v. Billington*, 541 F. Supp. 2d 358, 364 (D.D.C. 2008) (noting that "[p]ursuant to the Library's regulations, employees must file an administrative complaint with the EEO Office within twenty days of the allegedly discriminatory event").[2]  Mr. Hansen's complaint concerning his non-selection under VA 05-0168 (based on race discrimination and age) was, therefore, timely, and Mr. Billington does not argue otherwise. However, Count 1 also alleges a "hostile work environment" and non-selection in 2006, both of which are claims Mr. Billington argues were never timely made in the administrative process.

### B. EEO Case No. 06-31 (reprisal/retaliation for allegedly hostile email)

Mr. Hansen contacted the EEOCO on May 26, 2006, and filed a second formal

---

> worked in federal contracting, to my knowledge, before starting work at the Library. On the other hand, I have had over 21 years of federal contracting experience, was promoted to a temporary GS-1102-13 for a period of time, and have qualified for job interviews at the GS-1102-14 level.

Def.'s Mem., Ex. 1.

[2] The 20-day time period specified by the LCR is similar to, but obviously shorter than, the 45 days that regulations of the Equal Employment Opportunity Commission ("EEOC") allow for a federal employee in the Executive Branch to contact an EEO counselor. 29 C.F.R. § 1614.105(a). The Library is not subject to EEOC regulations.

complaint of discrimination on June 26, 2006.  This complaint alleged that he had received hostile electronic mail from his supervisor and that these hostile emails were sent in retaliation for his filing of EEO Case No. 06-11.  *See id.*, Ex. 2 (Allegation of Discrimination) ("[A]s I was reading two hostile memos addressed to me from Ms. Ursula Holmes she called me on the telephone to tell me I could not respond to emails and memos on Library time but had to do it on personal time at home.  I told her that if it was government business it had to be responded to on government time.  Ms. Holmes again said it was not to be done during working hours.") & Ex. 3 (Complaint of Discrimination) (same).

The EEOCO issued a decision on July 6, 2006, refusing to accept the complaint for processing based on Mr. Hansen's failure to identify any adverse action that caused him harm.  *See id.*, Ex. 4 (July 6, 2006, Letter from Jean Y. Johnson, Acting Assistant Chief, EEOCO).  The letter from the EEOCO informed Mr. Hansen of his right to appeal the decision to the Chief of the EEOCO, but Mr. Hansen did not file any appeal.

In the meantime, Mr. Hansen had applied for the position listed in VA 05-0233.  Am. Compl. ¶ 9b.  On February 17, 2006, the Library canceled VA 05-0233 and the position was not filled.  *Id.*  However, Mr. Hansen's second EEO complaint made no mention of these facts and he filed no claim that his non-selection in that instance was illegal under Title VII, the ADA, or the ADEA.

**C.  EEO Case No. 07-01 (reprisal; non-selection for VA 06-0078)**

Mr. Hansen did file a claim of discrimination on October 2, 2006, alleging that his non-selection for the position advertised in VA 06-0078 was illegal reprisal for his previous EEO activity.  *See* Def.'s Mem., Ex. 6 (Allegation of Discrimination).  In that filing, Mr. Hansen alleged:

> Denial of competitive promotion upon selection of outside individual to fill vacancy # 060078 [sic]. On Sept 27, 2006 Nydia Coleman, Chief of Contracts sent an email to the division announcing the selection of an outside individual for a GS-13 contract specialist position. As the senior contract specialist in the Division with over 22 years service I have applied for seven competitive promotion positions over the past year, and have not been selected while less qualified individuals were chosen.

*Id.*, Ex. 6 at 2. In his formal Complaint of Discrimination, filed on December 16, 2006, Mr. Hansen elaborated on his charges:

> There is an ongoing pattern and practice of discrimination in the selection of individuals to fill vacancies in the contracts office dating back to September 2005. There is discrimination in that all selections for GS-1102-13 and GS-1102-14 Contract Specialist and GS-1102-14 Procurement Analyst positions since September 2005:
>
> 1. have been African-Americans
> 2. that may have been brought in at pay rates far higher than merited by prior experience or salary rates
> 3. that an African-American was deliberately brought in at one grade to qualify him for competition for a higher grade
> 4. that non-African-American candidates were arbitrarily and capriciously deemed not as qualified even if they had decades of more contracting experience in the Federal Government and particularly in the unique environment and requirements of the Library of Congress
> 5. that non-African-American candidates were arbitrarily and capriciously deemed unqualified if no African-American candidates applied so as to result in the vacancy being cancelled to be reposted at a later date
> 6. that African-Americans were pre-selected by nature of prior personal relationships
> 7. that an African-American candidate was announced as the selection in a public meeting, August 31, 2006, before Human Resources had completed the approval and hiring process.
>
> This resulted in loss of earnings and pension benefits, mental anguish, increased medical care and costs, loss of sick leave and annual leave to seek treatment and respite from a hostile work environment, loss of productivity resulting in additional hostility in an attempt to effect a constructive discharge, and a plan to insure that only African-Americans would staff the

contracts office.

*Id*., Exh. 8.

### D. Administrative Decisions on Mr. Hansen's EEO Complaints

Following an evidentiary hearing regarding complaints 06-11 and 07-01, the hearing examiner issued a recommended decision on February 5, 2008. Am. Compl. ¶ 14. The hearing examiner's decision is not in the record. According to the Amended Complaint, the hearing examiner found that the Library "retaliated against [Mr. Hansen] when it withdrew the vacancy advertised under announcement 05-0233. The hearing examiner also held . . . that [the Library] did not discriminate against [Mr. Hansen] when it did not select him for the other vacancies." *Id*.

The Library issued a Final Agency Decision ("FAD") on April 3, 2008. *See* Compl. [Dkt # 1] Attach. 2 (FAD re EEO Case Nos. 06-11, 07-01). The FAD concurred with the hearing examiner that EEO Case No. 06-11 should be dismissed for lack of evidence showing a violation of Title VII or the ADEA. The FAD did not accept the hearing examiner's recommendation concerning EEO Case No. 07-01 — wherein Mr. Hansen alleged "a pattern and practice of discrimination and retaliation in violation of Title VII" — which the hearing officer thought had merit, because Mr. Hansen had not "provide[d] sufficient statistical evidence or comparative data" to show a pattern and practice of discrimination. *Id.* The FAD accepted the recommendation that Mr. Hansen did not meet his burden of proof with regard to VA 06-0078, but disagreed with the hearing examiner that Mr. Hansen's claims with respect to several others, including VA 05-0233 were timely filed. Finally, even if a claim concerning VA 05-0233 had been made, the FAD concluded that the Library's cancellation of VA 05-0233 was not motivated by discrimination, retaliation, or any other illegal motive. *Id.*

Mr. Hansen timely challenged the FAD in this Court. Count 1 of the Amended Complaint alleges that Mr. Hansen suffered race discrimination and a hostile work environment when he was not selected for the vacancies for which he applied in 2005 and 2006. Defendant moves to dismiss all race discrimination claims in Count 1 except those involving vacancy announcement VA 05-0168 and to dismiss the hostile work environment claim. Count 3 alleges that Mr. Hansen suffered "disability discrimination" when he "was subjected to a hostile work environment because of his disability . . . when his superiors denied him promotion . . . and withdrew, granted, and then withdrew again the flexible schedule which he had been granted." Am. Compl. ¶ 21. Defendant moves to dismiss Count 3 in its entirety. In Count 4, Mr. Hansen complains that he was retaliated against for having engaged in protected activity "when he was subjected to a hostile work environment and when he was not selected" for the promotions for which he applied in 2005 and 2006. *Id.* ¶ 23. Defendant moves to dismiss Count 4 in its entirety.[3] Mr. Hansen opposes.

## II. LEGAL STANDARDS

There exists some uncertainty within this District regarding whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim. *See Marcelus v. Corr. Corp. of America/Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n. 4 (D.D.C. 2008); Def.'s Mem. at 5 n. 7. Recent cases, however, favor treating failure to exhaust as a failure to state a claim rather than as a jurisdictional deficiency. *See, e.g., Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp.

---

[3] Thus, Defendant does *not* move to dismiss that part of Count 1 that complains of Mr. Hansen's non-selection under VA 05-0168 and Count 2, that complains of age discrimination in relation to the same non-selection.

2d 59, 64 n. 6 (D.D.C. 2008); *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008); *Marcelus*, 540 F. Supp. 2d at 234-35; *but see Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008) ("When a plaintiff fails to exhaust administrative remedies, dismissal under 12(b)(1) is appropriate."). Furthermore, this Court finds dismissal under Rule 12(b)(1) for failure to exhaust is inappropriate inasmuch as time periods for exhaustion as specified by statute can be tolled on the equities. *See Zipes v. TWA*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (internal quotation marks omitted) (noting that "the administrative filing requirement is not a jurisdictional prerequisite . . . and is, therefore, subject to equitable tolling").

In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). Where the alleged failure to state a claim results from plaintiff's failure to exhaust administrative remedies, however, a court will often need to consider portions of the administrative record that may not have been included in the complaint. Thus, a court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

A court will grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must draw "all justifiable inferences" in favor of the nonmoving party and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Yet, a nonmoving party must establish more than a " mere . . . scintilla of evidence" in support of its position. *Id.* at 252. Additionally, where a motion to dismiss is converted to a motion for summary judgment before discovery, the court must make sure both parties have had the opportunity to offer evidence in support of their factual allegations. *See Wiley v. Glassman*, 511 F.3d 151, 160-61 (D.C. Cir. 2007) ("[T]his court is free to characterize the District Court's Rule 12(b)(6) dismissal as a grant of summary judgment under Rule 56 and affirm, so long as we are assured that both sides had a reasonable opportunity to present evidence . . . .").

### III. ANALYSIS

"The statutory scheme of Title VII requires a plaintiff to exhaust his or her administrative remedies before a civil action may be filed in federal court." *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 12 (D.D.C. 2008); *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 9 (D.D.C. 2004). Mr. Billlington bases his partial motion to dismiss on this uncontested legal principle. *See* Pl.'s Opp'n. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. # 17] at 4 ("It is well settled that plaintiff employees must exhaust their administrative remedies prior to bringing suit under Title VII of the Civil Rights Act of 1964 . . . ."). The purpose for the exhaustion requirement "'is to afford the agency an opportunity to resolve the matter internally and thus avoid unnecessarily burdening the courts.'" *Id.* (quoting *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996)). Timely filing in the administrative forum is a necessity. With more precision, the Supreme Court has

instructed:

> [Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the . . . time period [for filing a claim]. . . . [C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period. The application of equitable doctrines, however, may either limit or toll the time period within which an employee must file a charge.

*Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 104 (2002).

These principles apply here. In support of their arguments that Mr. Hansen either did or did not exhaust his administrative remedies, each party has attached portions of the administrative record to its pleadings. From these documents, the Court concludes that Mr. Hansen's first EEO Case No. 06-11 (non-selection for VA 05-0168) charged the Library with race and age discrimination; as to those charges, it was timely. *See* Def.'s Mem., Ex. 1. Therefore, Count 1, to the extent it alleges race discrimination, and Count 2, which alleges age discrimination, with respect to Mr. Hansen's non-selection for VA 05-0168, are appropriately before the Court. However, the record shows that Mr. Hansen never made a timely complaint of failure to select in connection with any other 2005 application for a promotion and never made a hostile work environment claim in connection with his application for VA 05-0168. He is bound by his silence and cannot proceed here on any other 2005 promotion opportunities or the hostile work environment claim in Count 1.

Count 1 also complains that Mr. Hansen was discriminated against because of his race when he was not selected for promotion in 2006, *i.e.*, VA 06-0078, EEO Case No. 07-01. Mr. Billington moves to dismiss this allegation arguing that Mr. Hansen filed his allegation of discrimination on October 2, 2006, but his formal Complaint of Discrimination (filed on December

-10-

16, 2006) admitted that "an African-American candidate was announced as the selection in a public meeting, August 31, 2006," alerting Mr. Hansen to his non-selection and requiring him to file his claim within 20 days of that date. Def.'s Mem., Exh., 8. The Court must consider the facts in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255, and, in so doing, cannot agree with Mr. Billington's characterization of these events. As of August 31, Human Resources had not "completed the approval and hiring process," Def.'s Mem., Ex. 8, and, unless the evidence proves that approval by HR was a mere formality, it could not be said with certainty that the selected candidate would actually get the job. Once an email was sent to the division announcing the selection on September 27, that open question was answered. Mr. Hansen moved with dispatch thereafter and timely filed his claim on October 2, 2006.

Count 3 alleges that Mr. Hansen suffered "disability discrimination" when he was subjected to a hostile work environment and he was denied promotion and a flexible work schedule. Mr. Hansen never made a timely administrative complaint concerning disability discrimination and cannot proceed here on such a charge. Mr. Hansen attempts to avoid this conclusion by arguing that his demand for a remedy, in his third EEO complaint (EEO Case No. 07-01) — stating that the discrimination he charged had "resulted in . . . increased medical care and costs, loss of sick and annual leave to seek treatment and respite from a hostile work environment," Pl.'s Opp'n, Ex. 3 (Complaint of Discrimination) at 3 — should suffice. Pl.'s Opp'n. at 11. He notes *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970), in which the Fifth Circuit held that the "crucial element of a charge of discrimination is the factual statement contained therein." The D.C. Circuit, he argues, has followed this rationale. *Bell v. Brown*, 557 F.2d 849, 853 (D.C. Cir. 1977) ("'[F]or this reason,' we have observed, 'courts confronted with procedural ambiguities in the

statutory framework have, with virtual unanimity, resolved them in favor of the complaining party.'"). Mr. Hansen emphasizes that "courts ought to read administrative complaints with the understanding that 'they are framed by persons unschooled in technical pleadings.'" Pl.'s Opp'n at 11 (quoting *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)).

The cases cited by Mr. Hansen are inapposite. The factual statement in his third charge is laid out in an introduction and numbered paragraphs; the quote he offers here is his demand for a remedy for the alleged wrongs and is not included in his factual statement. Additionally, *Brown* allowed a Title VII suit against the Army to proceed in court in large part because the complaints had been exhaustively processed at the administrative level. These facts do not pertain here. Even drawing "all justifiable inferences" in Mr. Hansen's favor, the Court finds that Mr. Hansen's third EEO complaint made no mention of disability, much less disability discrimination. No one in the Library would have been on notice that he intended to advance a claim of disability discrimination, and such a claim was neither investigated nor decided.

Count 4 alleges that Mr. Hansen was retaliated against "when he was subjected to a hostile work environment and when he was not selected for the GS-13 Contract Specialist vacancies for which he applied in 2005 and 2006." Am. Compl. ¶ 23. None of Mr. Hansen's EEO complaints asserts an hostile work environment and he cannot make new allegations in court that have not been timely raised in an administrative filing. The only 2005 application before the Court is the one Mr. Hansen submitted in response to VA 05-0168, which became EEO Case No. 06-11. As far as the record reveals, that was Mr. Hansen's first EEO complaint. It did not allege retaliation for prior EEO activity, presumably because there had been no prior activity; the charge quite clearly claims race and age discrimination. The only 2006 application for a promotion before the Court is the one Mr.

Hansen submitted in response to VA 06-0078, which became EEO Case No. 07-01. Def.'s Mem. Ex. 6. In that instance, Mr. Hansen claimed retaliation but not race or age-based discrimination. Thus, the retaliation claim may proceed here.

### IV. CONCLUSION

Count 1 of the Amended Complaint alleges discrimination due to Mr. Hansen's race (caucasian) arising from a hostile work environment and non-selections for promotion in 2005 and 2006. Because Mr. Hansen never filed an EEO complaint alleging a hostile work environment or that he was discriminated against based on his race on the occasion of the 2006 non-selection, he has failed to exhaust his administrative remedies on those claims and they will be dismissed.

Count 3 of the Amended Complaint alleges disability discrimination and/or a hostile work environment due to his disability. Because Mr. Hansen never filed an EEO complaint alleging disability discrimination, he has failed to exhaust his administrative remedies on these claims and they will be dismissed.

Count 4 alleges retaliation for prior protected activity and a hostile work environment when Mr. Hansen was not selected for promotion in 2005 and 2006. Because Mr. Hansen never filed an EEO complaint alleging a hostile work environment or retaliation for protected activity, he has failed to exhaust his administrative remedies on these claims and they will be dismissed. To the extent that Count 4 alleges retaliation for prior protected activity in Mr. Hansen's non-selection in VA 06-0078 (EEO Case No. 07-01), he appears to have filed a timely complaint of discrimination and this claim will not be dismissed.

Mr. Billington's partial motion to dismiss will be granted in part and denied in part.

A memorializing order accompanies this memorandum opinion.


Date: August 5, 2009                                  /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge